**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**WEST INDIAN BOY X, a Juvenile**

Criminal No. 1993-195

District Court of the Virgin Islands

Div. of St. Thomas and St. John

May 26, 1994

MOORE, *Chief Judge*

## MEMORANDUM

This matter was before the Court on February 25, and March 1, 1994 for a hearing on the motion of West-Indian Boy X to suppress. The juvenile moved to suppress all items seized from, or statements made pursuant to, a warrantless arrest and search of the juvenile. The validity of the arrest has already been upheld. Based on the evidence presented and the arguments of counsel, the Court on March 1, 1994, rendered its findings from the bench and denied the motion to suppress the physical evidence seized, which findings and decision are incorporated herein by reference.

The admissibility of the statement was addressed in part by the Court's ruling from the bench. The Court found that the juvenile was properly given his Miranda warnings, which he voluntarily waived before giving the statement to Detective Peterson. Thus, if the juvenile were an adult, the statement would not be suppressed. The juvenile claims, however, that his status as a juvenile, standing alone, is a sufficient basis to suppress the statement because the officers did not comply with the local statute pertaining to juveniles. V.I. Code Ann. tit. 5, § 2512 (1983). He asserts that the police violated the specific requirement of section 2512(c) "that a parent or guardian who does not have an adverse position, a friendly adult, or the child's attorney [be] present at the interrogation when a statement [is] given." The Court also ruled from the bench that if section 2512 applies, it was violated by the police and the statement would be inadmissible. The question before the Court is thus whether the local juvenile procedure of section 2512 governs the admissibility of this statement or whether the federal law prescribing the treatment of juvenile offenders controls as set forth in 18 U.S.C. § 5033 (1974).

## FACTS

While the juvenile was being processed at the Four Winds Police Station, the sergeant in charge, learned that he was a minor and the son of a fellow police officer. When the sergeant was unsuccessful in reaching the father by telephone, he sent two officers to his home to get him. The officers did not find the father but did find Mrs. X, the juvenile's mother. Although her English was limited, the officers were able to explain that she needed to come with them to the station because her son was there, and Mrs. X got dressed and went

with them. Since Detective Peterson spoke some Spanish, he met Mrs. X, in the lobby of the station, and advised her of the nature of the charges against her son. When the father arrived, he talked with the sergeant in charge outside, was similarly advised of the charges, and then went into the Police Station to talk to his son. The juvenile refused to talk or otherwise respond to his father's efforts to communicate. The testimony was that West Indian Boy X (also referred to as "X") had already waived his Miranda rights and given a statement to Detective Peterson.

## FEDERAL LAW CONTROLS

■ Given the complexity and novelty of this issue in this jurisdiction and elsewhere, the Court asked counsel to brief the applicability of the local statute to a juvenile being tried in federal court. Although neither the parties nor the Court could find any decisions directly on point, it is a "general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal, rather than state [or territorial], law." United States v. Rickus, 737 F.2d 360, 363 (3d Cir. 1984) (citations omitted), followed and quoted in United States v. Stiver, 9 F.3d 298, 300 (3d Cir. 1993).[1] The Rickus court upheld an automobile stop and warrantless search of the vehicle and occupants by local police under federal law even where the trial court had found that the state agents had violated the state constitution, not just a state statute. In Stiver, the court used federal law to assess the validity of a search warrant issued by a state court and obtained and executed by state police officers against the defendant originally charged with state offenses.[2] This Court, as well as the court of appeals, "is not insensi-

---

[1] The juvenile cites to Third Circuit cases for the proposition that state law governs in federal court when the issue is the validity of an arrest made by state officers, and that the same principles apply when dealing with the admissibility of a juvenile's statement. See United States v. Di Re, 332 U.S. 581, 587–92 (1948) and United States v. Day, 455 F.2d 454 (3d Cir. 1972). These cases are inapposite since they do not involve the admissibility of evidence in a federal prosecution, but rather the validity of an arrest made under state law. United States v. Rickus, 737 F.2d 360, 364 n.2 (3d Cir. 1984).

[2] This rule of determining admissibility according to federal law in federal court is so strong in this Circuit that evidence suppressed by a state court because of an invalid state warrant was held admissible in a federal prosecution as long as it complied with federal constitutional requirements. United States v. Bedford, 519 F.2d 650, 654 (3d Cir. 1975), cert. denied, 424 U.S. 917 (1976).

tive to the claim that we should not encourage [territorial] officials to violate principles central to the [Territory's] social and governmental order," but we agree that "sanctions already exist to control the [territorial] officer's conduct." Rickus, 737 F.2d at 364. Virgin Island police officers are subject to civil suits and to departmental disciplinary actions. The Court therefore holds that federal law governs the admissibility of this juvenile's statement obtained by Virgin Islands police Detective Peterson, rather than the Virgin Islands Code provision regulating police interrogation of juveniles.

Having determined that federal law applies, the question remains whether the juvenile's statement at issue here is admissible under such law. The handling of a juvenile in custody up to the point when she is taken before a judicial officer is governed by 18 U.S.C. § 5033:

> Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall *immediately* advise such juvenile of his legal rights, in language comprehensible to a juvenile, and shall *immediately* notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense. (emphasis added)

While the statute emphatically directs the arresting officer to immediately advise the juvenile of his legal rights and to immediately notify the parents or guardian of the juvenile's custody, section 5033 displays no such urgency in requiring the arresting officer to notify the responsible adult of those legal rights and of the nature of the charge. Congress clearly knew how to say "immediately," and the only conclusion we can draw, consistent with sound principles of statutory construction, is that Congress deliberately chose not to include language of immediacy in the last sentence.

■ There is nothing in section 5033 that would compel, or even suggest, that the juvenile had a right to have an adult present during the interviewing process. There is nothing in it to mandate "parental consultation in order for a juvenile's statement to be admissible." United States v. White Bear, 668 F.2d 409, 412 (8th Cir. 1982) (finding no such requirement even while recognizing that some states condition the admissibility of a juvenile's confession on prior parental consultation). Accordingly, the statement of this

juvenile, West Indian Boy X, will not be suppressed because he was interrogated by Detective Peterson outside of the presence of either or both of his parents and before they received notice of their son's rights and the nature of the charges against him. The Court further finds that police officers complied with all the mandates of section 5033 by doing everything they could to notify immediately the defendant's parents of their son's custody.

## "TOTALITY OF THE CIRCUMSTANCES" IS THE TEST

■ The approach for determining whether a juvenile has waived his rights is to examine the totality of the circumstances, according to the Supreme Court. "The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation." Fare v. Michael C., 442 U.S. 707, 725 (1979). These circumstances include the juvenile's age, experience, education, background and intelligence, and his capacity to understand the warnings given, the nature of his Fifth Amendment Rights, and the consequences of waiving those rights. Id.[3]

■ Based on the evidence presented at the hearing the Court has already concluded that juvenile X is an intelligent young man who has done well in school. He thus had no difficulty understanding what was happening and what his rights were. Since his father is a Virgin Islands police officer with many years on the force, the juvenile grew up and was comfortable being around police officers. Moreover, he personally knew some of the police officers at the station. The Court realizes that the West Indian Boy X might have been scared and/or afraid but those emotions did not rise to the level of making him unable to understand what was happening. And finally, the juvenile expressed no desire, in fact he refused, to talk to his father, and therefore his father's presence or absence was

---

[3] See Vance v. Bordenkircher, 692 F.2d 978, 980–981 (4th Cir. 1982) (juvenile's mother was told that her son was being arrested, she chose not to go to the police station, the court made a totality of the circumstances evaluation to determine whether the confession was voluntary, including the moderate mental deficiency of the juvenile, his intelligence level and age, but noted that [y]outh by itself is not a ground for holding a confession inadmissible nor is age alone determinative), cert. denied, 464 U.S. 833 (1983); Cf. United States v. Indian Boy X, 565 F.2d 585, 591 (9th Cir. 1977) (juveniles are not entitled to any greater rights than adults under 18 U.S.C. § 5033); cert. denied, 439 U.S. 841 (1978).

no factor. Based on the totality of the circumstances, the Court finds that the juvenile was properly given his Miranda warnings, understood his rights, and knowingly, intelligently and voluntarily waived those rights, including the right to counsel, before giving the statement to Detective Peterson. The statement of West Indian Box X is therefore admissible and his motion to suppress it is denied.

This matter has been under review by the Court since March 31, 1994 when the last brief regarding the application of the local juvenile statute and the federal statute was filed. Pursuant to 18 U.S.C. § 5036 the Court finds that the ends of justice are served by excluding all delay from March 31, 1994 to the date of this ruling and outweigh the best interest of the public and the juvenile in a speedy trial, given the novelty of the issues presented for the first time in this jurisdiction and the significance and complexity of the constitutional issues presented.

## CONCLUSION

Based on the foregoing analysis, the Court holds that the West Indian Boy X knowingly and voluntarily waived his rights and that the police did not violate 18 U.S.C. § 5033. Accordingly, the juvenile's motion to suppress will be denied. An appropriate order follows.

## ORDER

AND NOW, this 26th day of May 1994, upon consideration of the juvenile's motion to suppress, and based upon the Memorandum of even date, it is hereby

ORDERED that the motion of West Indian Boy X to suppress is DENIED and this case is set for the trial week of June 6, 1994; and it is further

ORDERED that pursuant to 18 U.S.C. § 5036 any delay from March 31, 1994 to the present is excluded for purposes of speedy trial calculations.