**VIRGIN ISLANDS ex rel. A. V., a minor**

Family No. J36/2000

Territorial Court of the Virgin Islands

Division of St. Croix

May 1, 2001

JOMO MEADE, ESQ., *for the Minor*

CHARLOTTE POOLE-DAVIS, ESQ., Assistant Attorney General, *for the Government*

STEELE, *Judge*

## MEMORANDUM OPINION

(May 1, 2001)

THIS MATTER came before the Court on the minor's ("A.V.") Motion In Limine to Exclude Inculpatory Statements Made to Police on April 28, 2000[1] A.V. contends that the statement he gave to the police on the aforementioned date should be suppressed because he did not voluntarily and knowingly waive his Fifth Amendment rights as required by *Miranda v. Arizona* before the statement was taken. 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The matter was heard on February 22, 2001. The minor appeared with counsel Jomo Meade, Esq. The Government was represented by Assistant Attorney General Charlotte Poole-Davis, Esq. The circumstances in this case present several issues not commonly before this court. Nevertheless, the Court recognizes that it is highly probable that circumstances very similar to these may present themselves in the future. As such, a rubric for detailed analysis will be of assistance.

## FACTS

A.V. is a native of the Dominican Republic and Spanish is his first and primary language. He is a resident alien of the United States Virgin Islands with an INS green card. While in the U.S.V.I he attended public high school with bilingual instruction in English, math, carpentry and physical education until he withdrew from classes in the spring of 2000. There appeared to be some confusion regarding A.V.'s level of academic proficiency. The question of whether or not his cognitive skill were commensurate with his assigned grade or if he performed on a sixth or

---

[1] The police department's contact card shows the date to have been April 25, 2000.

seventh grade level was not ascertained.[2] A.V. testified that since he has not been in the Territory very long his understanding of, and ability to speak English, is very limited and he is more comfortable reading, writing and speaking in Spanish.[3]

Virgin Islands Police Department officers detained A.V. at his place of employment and took him into custody on an allegation of rape made by a female minor. Upon arrival at the police station, A.V. was placed in the custody of VIPD Detective Claudette Sutton. A.V.'s father was called and told to bring his son's green card and personal identification papers to the police station. Detective Sutton recited the *Miranda* advisory to A.V. in English and began to question him. A.V. was later taken to an interrogation room where the questioning continued. Detective Lorraine Hassell, a Spanish/English interpreter, was called upon to assist with the interrogation.[4]

The questioning continued for several hours. A.V. testified that he asked several times if he could go home, but was told that he couldn't leave the police station until he gave a statement. It was also his testimony that Hassell told him not to be afraid because if he told the truth nothing would happen to him. Once A.V.'s father arrived at the station Detective Hassell gave A.V. a copy of the *Miranda* advisory in Spanish and preceded to read it to both he and his father in Spanish. Detective Hassell then asked A.V. very particular questions and wrote down his responses. She then told him to review what she had written and to sign the bottom of the pages. A.V.'s father also signed each page

---

[2] Officer Claudette Sutton testified that she knew the minor to be a student at Central High School. Whereas, Officer Lorraine Hassell testified that A.V. told her that he dropped out of school in the sixth or seventh grade.

[3] An interpreter provided English to Spanish translation for A.V. throughout the hearing. A.V.'s testimony was given in Spanish and translated into English for the Court.

[4] The Court could not determine exactly how many additional police officers were present in the interrogation room at various times. Based on the testimony of Detectives Sutton and Hassell several officers were going and coming from the room while A.V. was being questioned. A.V. testified that at one point there were at least four officers in the room, all of who were asking him questions about the allegations. Given the vague and ambiguous nature of the Detective's testimony regarding the persons present in the interrogation room and A.V.'s detailed and specific testimony concerning the same, the Court finds that there were multiple persons questioning A.V. simultaneously.

of the statement. After relinquishing all of his personal identification to Detective Sutton, A.V. was allowed to go home with his father.

## ANALYSIS

■ When the police conduct a custodial interrogation there are certain obligations that have been imposed upon them by the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). *U.S. v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989); *cert. denied*, 494 U.S. 1017, 108 L. Ed. 2d 497, 110 S. Ct. 1321 (1990). Those obligations are necessary requirements to alleviate the "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* (quoting, *Miranda* at 467). Before the police begin their interrogation, they must notify a suspect of his right to remain silent as well as his right to have an attorney present during the questioning. They must also inform him of their intent to use whatever he says to obtain a conviction. *Id.*

■ However, a suspect may waive the rights afforded to him under *Miranda* on condition that the waiver is given voluntarily, knowingly and intelligently. *Miranda* at 444. To determine if the waiver met the necessary requirements there are two inquiries that must first be answered affirmatively. The voluntariness of the waiver is the first consideration. To be voluntary the waiver must have been "the product of a free and deliberate choice [made by the suspect] rather than intimidation, coercion or deception [committed by the police]." *Velasquez* at 1084 (*quoting Moran v. Burbine*, 475 U.S. 412, 421, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986) (*citing Fare v. Michael Co.*, 442 U.S. 707, 725, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979)); (*see also Alston v. Redman*, 34 F.3d 1237, 1253 (3d Cir. 1994). The second consideration is predicated on the suspects knowledge and intelligence. Thus, the waiver "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

■ A hasty recitation of the *Miranda* advisory does not satisfy the requirements enumerated by the Supreme Court. Although television programs[5] often show the advisory given in such a fashion, the police

---

[5] The Government postulated in closing arguments that A.V. had to understand the implications of the *Miranda* warning because TV programs show it being given all the time, and therefore, its meaning is commonly understood.

must be mindful that television is not reflective of the law or what is required under the law. Police officers must also realize that it is not the responsibility of television programs to educate the public (persons who may one day finds themselves in the position of being a suspect) on the meaning of the advisory or on the repercussions of waiving the rights provided in that advisory; neither has the television industry placed itself in a position for this responsibility to be imputed on them, nor can an understanding of the advisory be imputed on the television viewer solely because of its prevalence in programming. It is incumbent upon the police to ensure that a suspect comprehends the advisory; it is not enough that a suspect understands the words themselves, but that he appreciates what the words mean in relation to his instant predicament. The question of whether or not the suspect waived his rights *"is not one of form,* but rather whether the defendant *in fact* knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Fare v. Michael C.,* 442 U.S. 707, 724, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979).

 The burden is on the government to prove beyond a preponderance of the evidence that the waiver was obtained properly. *Velasquez* at 1086 (*citing Colorado v. Connelly,* 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515 (1986). When the suspect claims either that the waiver was not voluntarily or knowingly and intelligently given, the Court must look at the "totality of the circumstances" surrounding the incident. *885 F.2d at 1086* (*citing Oregon v. Bradshaw,* 462 U.S. 1039, 1046, 77 L. Ed. 2d 405, 103 S. Ct. 2830 (1983) (*quoting Edwards v. Arizona,* 451 U.S. 477, 486 n.9, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981)). An examination of the totality of the circumstances requires consideration of the facts of that particular case; those facts include, in addition to the essentials of the crime being charged, the background, experience and conduct of the suspect. *Velasquez* at 1086 (*citing Bradshaw* at 1046). This analysis is especially important when the suspect is a juvenile. *Fare* at 725. "The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background and intelligence, and whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.* The Supreme Court has stated that the special expertise of the juvenile court allows it to "take into account those special concerns that are present when young

persons, often with limited experience and education and with immature judgment, are involved." *Id.* "Only if the 'totality of the circumstances surrounding the interrogation' reveal *both* an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Alston v. Redman,* 34 F.3d 1237, 1253 (3d Cir. 1994) (*quoting Moran v. Burbine,* 475 U.S. 412, 421, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986)); (emphasis added).

## DISCUSSION

Both A.V. and his father signed waivers, pre-printed in Spanish, which stated that he had been given the *Miranda* advisory and was relinquishing the rights it granted him. Yet, as noted supra, question of the waiver "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Fare* at 724. Thus, to ascertain whether A.V. in fact knowingly and voluntarily waived his rights the Court must look at the totality of his individual circumstances.

The Government argued that the instant circumstances were comparable with those chronicled in *United States of America v. West Indian Boy X,* 30 V.I. 151 (D.C. 1994), in which the minor, Boy X, was found to have waived his rights prior to making an inculpatory statement. After examining of the 'totality of the circumstances' in that case the court found that Boy X was "an intelligent young man who has done well in school. He thus had no difficulty understanding what was happening and what his rights were." *West Indian Boy X* at 155. Boy X also knew many of the police officers at the station because his father had been a Virgin Islands police officer for many years. Furthermore, Boy X "expressed no desire, in fact he refused, to talk to his father ..." *Id.* The facts in the case of West Indian Boy X are diametrically opposed to those presently before the Court. Although, A.V. was seventeen years old and nearing emancipation at the time of the incident, that fact alone, while it would have significant meaning for a typical American teenager in the tenth grade, is not sufficient for the court to find that he possessed the requisite knowledge and intellect to waive his rights. A.V. has not had the same type of experiences, education and background as most American teenagers. First, the majority of his life was spent in a country with customs and laws different to those of the United States. He has only been a resident of this country for a short time. Despite the fact that

145

he was placed in the tenth grade, his level of academic ability is questionable. Additionally, English is not A.V.'s primary language. Though he can speak and understand English to a degree, he is less than fluent.[6] The fact that many of the contextual meanings within the English language are lost with translation does not escape the Court's attention. Having considered A.V.'s age, education and background, the Court does not find that he possessed the requisite ability to knowingly and intelligently waive his *Miranda* rights.

The Supreme Court has stated that for a waiver to be considered voluntary it must be the "product of a free and deliberate choice rather than intimidation, coercion or deception." *Velasquez* at 1088 (*quoting Moran v. Burbine,* 475 U.S. 412, 421, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986). However, blatant deception by the police does not necessarily make the waiver involuntary, but that deception does become part of the 'totality of the circumstances' to be considered by the court. 885 F.2d at 1088 (*citing Frazier v. Cupp,* 394 U.S. 731, 739, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969); *Miller v. Fenton,* 796 F.2d 598, 607 (3d Cir.), *cert. denied,* 479 U.S. 989, 107 S. Ct. 585, 93 L. Ed. 2d 587 (1986)).[7] While lies told by the police may influence a suspects decision to confess, if the "decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary.... [But when the deceptions are] so manipulative or coercive that they deprive [the suspect] of his ability to make an unconstrained, autonomous decision to confess" those lies render the confession involuntarily obtained. *Velasquez* at 1088 n.11 (*quoting Miller* at 605).[8] Moreover, "the issue of voluntariness is a legal,

---

[6] Detective Hassell testified that Detective Sutton requested that she take A.V.'s statement in Spanish because he understood more Spanish than English, and given the seriousness of the offense they wanted to prevent any possible *Miranda* violations.

[7] The *Velasquez* court recognized that although the *Frazier* and *Miller* decisions dealt with the voluntariness of a confession, the same analysis could be employed when considering the voluntariness of a waiver "because the analytical framework applied in the confession context — the totality of the circumstances — is also the proper approach to the waiver issue." 885 F.2d at 1088 (*citing Bradshaw,* 462 U.S. at 1046).

[8] Each of the following was found to be an acceptable deception by the police: In *Frazier,* the police officer told the defendant, falsely, that his partner confessed. 394 U.S. at 737-38. In *Miller,* the officer lied to the defendant about the victims time of

146

rather than a factual question" and should be determined by the Court. *Velasquez* at 1086 n.8 (*quoting Miller* at 601).

 Upon further examination of the totality of the circumstances, the Court does not believe that A.V. understood the nature of his 5th Amendment rights or what the consequences would be if he waived those rights. Even though A.V. received the *Miranda* advisory in Spanish the police detectives conducting the interrogation told him that he could not go home until he gave a statement.[9] A.V. further testified that the officers told him to tell the truth, not to be afraid and nothing was going to happen to him because he was a minor.[10] This Court is of the opinion that these deceptions were more than mere lies about the facts surrounding the crime. They misrepresented A.V.'s rights, and made erroneous legal conclusions[11] which constructively precluded any ability A.V. had to voluntarily waive his *Miranda* rights.

 Since the Defendant claimed that neither the waiver nor his subsequent confession was voluntary, the burden was on the government to prove that they were. To prevail, the Government must have proven that burden beyond a preponderance of the evidence; meaning the government had to show that their position was more probable than not, that the evidence they offered was more convincing than the evidence offered in opposition to it.[12] The government did not meet its burden of

---

death. 796 F.2d at 607. In *Velasquez*, the officer told the defendant that her co-defendant placed all the blame on her. 885 F.2d at 1089.

[9] A.V. testified that he was told that the only way he would be allowed to go home with his father was if he gave a statement about his involvement with the victim. Detective Hassell testified that although A.V. was being detained he did not have to answer any questions, but she did not believe that anyone informed him of that fact.

[10] A.V.'s testimony was repeatedly interrupted by objections from the Government's Attorney; thus, determining at what point during the interrogation the officers made each of the statements to him was not apparent, but he stated emphatically that he only signed the statement because Detective Hassell told him nothing would happen to him because he was a minor.

[11] The charges against A.V. consist of what is commonly referred to as 'statutory rape' in which the consent of the victim is irrelevant. The statutorily proscribed age for sexual consent and the actual age of the victim are the only considerations. The fact that the suspect is also a minor does not negate his guilt.

[12] "Preponderance of the evidence" as defined by BLACKS LAW DICTIONARY, 6th ed., West Publishing Co., 1995.

proof. The evidence they proffered regarding A.V.'s education, intelligence and background was speculative at best. They did not conclusively determine his level of education or if he had any previous experience with the justice system. The government did not even bother to obtain school records to attest to A.V.'s actual grade placement or level of academic ability. They did attempt to show that he understood the *Miranda* advisory because he had previous experience with the justice system, but there weren't any records offered to support this position either.[13] Therefore, in light of the government's inability to prove anything to the contrary, this Court finds that the waiver by A.V. was not voluntarily, knowingly or intelligently given; and thus, the confession shall be suppressed.

## CONCLUSION

A juvenile suspect's knowledge and understanding of his constitutional rights cannot be assumed, particularly when the relinquishment of those rights may result in the deprivation of his liberty and freedom. Due care must be taken to ensure that a suspect, especially a non-citizen juvenile suspect, comprehends all of the ramifications and possible consequences of waiving those rights prior to signing a preprinted form. The confession given by the minor contravened his 5th Amendment rights. Because he did not voluntarily, knowingly and intelligently waive those rights his confession must be suppressed. This Court will issue an appropriate order.

---

[13] Detective Sutton testified that a year prior to the current incident she questioned A.V. along with a group of his friends at the high school. However, it was not determined whether he was detained or advised of his rights at that time. Conversely, A.V. testified that he never had any dealings with the police prior to the instant situation.