**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**N'KAI COLON, JELANI GUMBS, DIONNO BROOKS, KHALIF J. FRANCIS, and JEQUAN J. JOSEPH, Defendants**

Case Nos. ST-13-CR-F249, ST-13-CR-F250, ST-13-CR-F251, ST-13-CR-F354, ST-13-CR-F355

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 5, 2015

126

127

128

DANIEL HUSTON, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Plaintiff.*

PEDRO K. WILLIAMS, ESQ., Law Offices of Pedro K. Williams, St. Thomas, USVI, *Attorney for Defendant Jelani Gumbs.*

SAMUEL L. JOSEPH, ESQ., Chief Territorial Public Defender, St. Thomas, USVI, *Attorney for Defendant Khalif J. Francis.*

DARREN JOHN BAPTISTE, ESQ., The Law Offices of Darren John Baptiste, St. Thomas, USVI, *Attorney for Defendant Jequan J. Joseph.*

DONNIE M. KING, ESQ., The Law Offices of Robert L. King, St. Thomas, USVI, *Attorney for Defendant N'Kai Colon.*

DANIEL J. GRAVEL, ESQ., c/o Bellicose VI, LLC, St. Thomas, USVI, *Attorney for Dionno Brooks.*

J. RUSSELL B. PATE, ESQ., The Pate Law Firm, St. Thomas, USVI, *Co-Counsel for Dionno Brooks.*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(August 5, 2015)

Pending before the Court in the above-captioned criminal cases[1] is the "Defendant's Motion to Suppress" filed by Defendant Khalif J. Francis ("Defendant Francis"). The People of the Virgin Islands (the "People") filed a written opposition to this motion, and the Court held an evidentiary hearing on the matter.[2]

---

[1] This Court has jurisdiction over all of the crimes charged in these cases. V.I. CODE ANN. tit 4, § 76(b), as amended.

[2] At the suppression hearing, all parties were represented by their attorneys of record. The Court heard testimony from Detective Monique Hodge Donovan of the VIPD, Mr. Franklin Francis (Defendant Francis' father), Mrs. Verna Francis (Defendant Francis' mother), and

131

## I. FACTUAL BACKGROUND.

These consolidated cases arise out of the assault perpetrated on Mr. William Hyde on November 23, 2012, in St. Thomas, U.S. Virgin Islands. Mr. Hyde was found on Magens Bay in the early morning hours of that day beaten and unconscious. He was initially taken to the Schneider Regional Medical Center for treatment, and then airlifted to a medical facility in Florida for further medical care. On December 17, 2012, Mr. Hyde succumbed to the injuries he suffered in the incident. All of the named Defendants have been charged with numerous crimes, including, but not limited to, murder, assault, and using a dangerous weapon in the commission of a crime of violence.[3] At the time of the assault on Mr. Hyde, all Defendants were minors under Virgin Islands law.[4]

On November 29, 2012, a daughter of Mr. Hyde reported that his vehicle was missing. She was advised to file a report with the Virgin Islands Police Department (the "VIPD"), and she followed that guidance. During the investigation of this incident, the VIPD reviewed a video recording obtained from Magens Bay for the day in question, which showed a pick-up truck matching the description of Mr. Hyde's personal vehicle entering and exiting the beach. However, the video recording did not reveal who was in, or operating, the truck at the time. The VIPD later received information that the truck was observed in the area of Anna's Retreat, and, after locating it, conducted surveillance. On November 30, 2012, the VIPD observed Defendant Francis approaching Mr. Hyde's truck, opening a door, and entering it. He was approached by the VIPD, ordered out of the vehicle, and observed with the keys for it. Defendant Francis was arrested for unauthorized use of a vehicle and/or tampering with a vehicle[5] and transported to the VIPD's Juvenile Bureau at the Zone A Command.

After arriving at the police station, the VIPD placed Defendant Francis in a room by himself and contacted his parents. He was not questioned by

VIPD Officer Steven Phillip. The Court also admitted the People's Exhibits 1, 2, and 3 into evidence.

[3] Pursuant to a plea agreement, Defendant Dionno Brooks pleaded guilty to a single count of conspiracy, in violation of 14 V.I.C. § 551(1). He has not yet been sentenced on that charge.

[4] *See* 5 V.I.C. § 2502(7); 16 V.I.C. § 261.

[5] *See* 14 V.I.C. §§ 1382, 1384.

the VIPD while awaiting the arrival of his parents. When they appeared, the VIPD advised them about the situation. The parents were given an opportunity to speak with Defendant Francis without any officers present. Thereafter, he and his parents went to an area where the VIPD officers and detectives were located, and Defendant Francis was orally advised of his constitutional rights. He then executed a form titled "Warning as to Rights" ("*Miranda* Form")[6] which recited the same rights and also contained a section expressly waiving his rights to counsel and to remain silent.[7] Defendant Francis provided a written statement to the VIPD in a question and answer format. Once that process was completed, Defendant Francis re-read the written statement, initialed any corrections, and signed each page. All of these activities were conducted in the presence of his parents, and they executed the *Miranda* Form as witnesses.

Defendant Francis' cell phone, which was seized from him during the arrest process, was on a desk, or in a desk drawer, at the Juvenile Bureau while he was being questioned. During the course of his questioning, Mr. Francis executed a receipt form acknowledging that the cell phone was relinquished to the VIPD.[8] At the conclusion of his examination, Defendant Francis was released into the custody of his parents, but the VIPD retained possession of the cellular device. At an unidentified later date, and without obtaining a search warrant, the VIPD searched for and obtained content information from this cell phone.

## II. LEGAL DISCUSSION.

Defendant Francis presents three bases for the requested suppression of his November 30, 2012, statement and the information later seized from his cellular telephone. First, his statement was obtained in violation of Virgin Islands law and his Fifth Amendment protection against self-incrimination. Second, the People acquired his statement in violation of Virgin Islands law and his Fifth Amendment right to counsel. Third, he contends that the People searched for and seized the information from his

---

[6] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] The executed *Miranda* Form was admitted into evidence as Plaintiff's Exhibit 1.

[8] The "Receipt for Cash or Other Items" form was admitted into evidence as Plaintiff's Exhibit 3.

cell phone in violation of his rights under the Fourth Amendment.[9] Each argument is addressed below.

**A. Defendant Francis' Statements were not Obtained in Violation of Virgin Islands Law or his Fifth Amendment Right Against Self-Incrimination.**

**1. Defendant Francis' Statements were Taken in a Fashion Consistent with title 5, § 2512, Virgin Islands Code.**

The Virgin Islands Legislature has enacted a specific evidentiary statute governing the admission of statements of minors in the course of juvenile delinquency and criminal investigations and proceedings. Defendant Francis relies on this legislation in support of his request to suppress his November 30, 2012, statement to the VIPD. The pertinent law, 5 V.I.C. § 2512, provides,

> No admissions or statements of a child made while in custody to law enforcement officers or made to the Attorney General or employees of the Youth Services Administration during the processing of the case shall be admissible in evidence against the child unless the government proves to the court's satisfaction the following:
>
> (a) That at all stages of the interrogation the child was informed of his constitutional rights against self-incrimination and understood them; and
>
> (b) That no physical force or coercion, promises, threats, or other unlawful means of inducement were employed in obtaining the confession, admission or other incriminating statement; and
>
> (c) That a parent or guardian who does not have an adverse position, a friendly adult, or the child's attorney was present at the interrogation when a statement was given.

 Although § 2512 of title 5 was enacted in 1983, there are few published cases which cite to it, and none of them construe its language.[10]

---

[9] The Fourth and Fifth Amendments to the United States Constitution are in full force and effect in this Territory. *See* Revised Organic Act of the Virgin Islands 1954, as amended, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88 (1995) (preceding V.I. CODE ANN. tit. 1).

[10] *See Gov't of the V.I. v. A.M.*, 34 F.3d 153, 30 V.I. 442 (3d Cir. 1994) (concluding that the requirements of § 2512(c) were not met in that case without any further discussion); *Newton v. Gov't of the V.I.*, 48 V.I. 349 (D.V.I. App. Div. 2005) (holding that § 2512 does not apply

134

In the absence of binding judicial precedent, this Court must discern and give effect to the legislative intent as expressed by the language employed.[11] The purpose of § 2512 is to ensure that statements made by juveniles in a custodial setting are voluntarily given, by imposing certain safeguards which are not applicable to adults in the same situation.[12] The rationale for providing minors this added protection is that they are ". . . more susceptible to police coercion than adults in custodial interrogation. . . ."[13] For this reason, the statute alters the general rule that relevant evidence is presumptively admissible.[14] Rather, section 2512 presumes that a minor's statements to law enforcement personnel are inadmissible unless, the provisions of subsections (a), (b), and (c) are demonstrated on the record. The burden is on the People to overcome this presumption of inadmissibility to the "court's satisfaction."[15] This criterion is not defined in the Virgin Islands Code or any court rules. But, as a general rule courts hold that the determination of admissibility of evidentiary material is governed by the preponderance of the evidence standard.[16] The Court will hold the People to this standard because it is

---

to statements given by minors who are witnesses and not charged with delinquent or criminal acts); *United States v. West Indian Boy X*, 30 V.I. 151 (D.V.I. 1994) (noting that 18 U.S.C. § 5033, and not 5 V.I.C. § 2512, governs juvenile proceedings in the District Court of the Virgin Islands).

[11] *E.g., Brady v. Cintron*, 55 V.I. 802, 820-21 (2011) ("The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. The inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (citations omitted); *Gov't of the V.I. v. Johnson*, 45 V.I. 365, 369 (Terr. Ct. 2004) (citing *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998)).

[12] *See Newton v. Gov't of the V.I.*, 48 V.I. at 359-60.

[13] *Id.*

[14] FED. R. EVID. 402. The Federal Rules of Evidence govern trial proceedings in the Superior Court. Act No. 7161, § 15(b), 2009 V.I. Sess. Laws 50; SUPER. CT. R. 7.

[15] 5 V.I.C. § 2512.

[16] *E.g., Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987) (In addressing the burden of proof applicable to the determination of co-conspirator statements, the High Court stated "We are therefore guided by our prior decisions regarding admissibility determinations that hinge on preliminary factual questions. We have traditionally required that these matters be established by a preponderance of proof.") (citations omitted). *See also Hand v. Houk*, No. 2:07-cv-846, 2013 U.S. Dist. LEXIS 75378 at *35-37 (S.D. Ohio May 29, 2013) (The trial court applied the preponderance of the evidence standard to decide the admissibility of a decedent's statements in a homicide case under the rules governing hearsay exceptions.); *Payne v. Wyeth Pharms., Inc.*, No. 2:08cv119, 2008 U.S. Dist. LEXIS

well-established in jurisprudence, and there is no indication in § 2512 that the Legislature intended a higher evidentiary standard to apply to this determination.

**a. Defendant Francis was Advised of his Right Against Self-Incrimination, and Unlawful Means Were not Used to Obtain his Statement.**

Defendant Francis first posits that his statement should be suppressed because it was obtained by force and coercion. The People counter that his execution of the standard *Miranda* Form demonstrates there was compliance with the statutory requirements. The People add that the evidence adduced at the hearing failed to show there was any improper governmental conduct in the vein of coercion.

In the present case, there is no question that Defendant Francis was advised of his right against self-incrimination. The VIPD witnesses and his parents testified he was provided and read the *Miranda* Form which states "You have the right to remain silent [,]" and "Anything you say can be used against you in court, or other proceeding." Defendant Francis executed this document, and his parents witnessed his signature. Although this evidence demonstrates compliance with 5 V.I.C. § 2512(a), Defendant Francis nevertheless argues physical force and coercion were applied to him by his parents in contravention of 5 V.I.C. § 2512(b).

At the hearing, Defendant Francis' father and mother testified that when they arrived at the Zone A Police Command, he was in a back room by himself. The VIPD advised them that their son had been arrested in connection with a stolen truck. They were taken to the room and left with their son without any police presence. Both the mother and father testified they each hit Defendant Francis during this encounter.[17] But, his father also testified that they had similar disciplinary interactions in the past, and Defendant Francis barely reacted to his parents' behavior. There was no testimony that any further physical contact occurred, that Defendant Francis was physically, mentally, or emotionally harmed, or that the VIPD

---

106771 at *5 (E.D. Va. Nov. 14, 2008) (The district court noted that the admissibility determination of expert testimony is governed by the preponderance of the evidence standard.) (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)).

[17] Mr. Francis testified that he was upset by the situation and punched his son in the chest once. Mrs. Francis averred that she "cuffed" him as she was both unhappy with the situation and concerned for her son.

officers were aware of this episode when they took his statement. Also, no testimony was elicited that the VIPD officers in any manner encouraged the parents' actions. After the parents and Defendant Francis conferred, his parents told him to speak with the VIPD, and he did so as discussed above. Defendant Francis invites this Court to find that this is the type of conduct which warrants the suppression of his statements under 5 V.I.C. § 2512(b).

▮ The Court disagrees with both Defendant Francis' and the People's construction of § 2512(b) as applied to the facts of this case. The provision does not, on its face, place any limitation upon the source of any ". . . physical force or coercion, promises, threats, or other unlawful means of inducement . . ." which improperly induces a young person to give an incriminating statement to law enforcement officials. Thus, contrary to the People's assertion, the prohibited influence which leads to the statement may originate from a source other than a law enforcement official — such as parents. However, in giving effect to the statutory language, the Court must consider *all* of the words used in section 2512.[18] Therefore, Defendant Francis also is incorrect in contending the actions of his parents in the back room at the Juvenile Bureau, standing alone, require suppression of his statement.[19]

▮ The statute prohibits the use of ". . . physical force or coercion . . . or other unlawful means of inducement . . . **in obtaining the confession, admission or other incriminating statement**."[20] While the parents admitted to each hitting him and wanting him to speak with the police, it does not appear that the parents' corporal punishment was used, directly or indirectly, to obtain Defendant Francis' statement to the VIPD. Rather, his parents testified that their behavior was borne out of frustration at their

---

[18] *See Gov't of the V.I. v. Cröoke*, 54 V.I. 237, 270-71 (V.I. 2010) (Swan, J. dissenting). *See also United States v. Caceres-Olla*, 738 F.3d 1051, 1056 (9th Cir. 2013).

[19] *See In re Appeal in Pima Cnty. Juvenile Action*, 116 Ariz. 519, 570 P.2d 206, 208 (Ariz. Ct. App. 1977) (In a probation revocation proceeding, a juvenile's statement was admissible under the totality of the circumstances although the statement was made in the absence of his parents, and there was testimony from the defendant and two witnesses that one officer hit the defendant.); *In re Aaron V.*, H023899, 2003 Cal. App. Unpub. LEXIS 3920 at *5-12 (Cal. Ct. App. Apr. 18, 2003) (A juvenile's statement was admissible at trial when it was given to an officer at the police station outside the presence of his parents, and after the mother slapped the minor in the face.) (generally not citable in California under pertinent court rules).

[20] 5 V.I.C. § 2512(c) (emphasis added).

137

son being arrested and concern for him — not geared toward overbearing his will. The Court cannot conclude that the parents abused Defendant Francis as defined in chapter 201 of title 5, Virgin Islands Code.[21] There was no testimony that Defendant Francis disagreed with his parents at any time about giving a statement to the VIPD. In fact, both his parents and the VIPD witnesses acknowledged that the questioning process was free from any intimidation directed at Defendant Francis by anyone. The parents' meeting with him in the rear room at the police station was not raised in his questioning process. In viewing the demeanor of the witnesses who testified, and hearing and comparing their descriptions of what transpired, there was no indicia that Defendant Francis felt intimidated by anyone when he gave his statement. Further, his parents disagreed with the VIPD witnesses about other issues raised at the hearing about the events of November 30, 2012. Thus, Defendant Francis' claim that his parents' presence was "counterproductive" is belied by the record as a whole, leading the Court to conclude that his November 30, 2012, statement was not induced by any unlawful means prohibited by § 2512(b).

**b. Defendant Francis and his Parents Were not in an Adverse Position on November 30, 2012.**

Defendant Francis also contends that his parents were in an "adverse position" to him at the VIPD questioning, and, therefore, his statement is inadmissible pursuant to § 2512(c). Again, Defendant Francis relies on the fact his parents encouraged him to speak with the police and the pre-statement physical interaction between him and his parents. While the phrase "parent or guardian who does not have an adverse position . . ." is not defined in the Virgin Islands Code or local jurisprudence, non-binding judicial precedents from other jurisdictions discussing the terms "interested adult," "concerned adult," or similar terminology provide some assistance.

In a Massachusetts case,[22] a 15-year old minor was charged with breaking and entering with the intent to commit a felony. After his arrest,

---

[21] *See* 5 V.I.C. § 2502(2). This does not mean that there must be abuse, as statutorily defined, to establish the "unlawful means" of § 2512(b). However, its presence or absence in the record is a factor to be considered with all other circumstances.

[22] *Commonwealth v. Quint Q.*, 84 Mass. App. Ct. 507, 998 N.E.2d 363 (2013), *appeal denied*, 467 Mass. 1107, 6 N.E.3d 547 (2014).

the young man was taken to a police station, and his mother was advised of his predicament. The mother went to the precinct, and, after her arrival, the police began to question the juvenile in her presence after both signed and/or initialed a *Miranda* warning form.[23] During the course of the questioning, the minor's mother made several statements, in the presence of the questioning officer, which arguably incriminated the juvenile.[24] At the trial level, the juvenile moved to suppress his statement averring, in part, that he did not have the assistance of an "interested adult" as required by Massachusetts case law because his mother's statements were very coercive. The trial judge granted the motion and suppressed the statement, agreeing that the mother's statements were intimidating and disqualified her as an interested adult.

The Commonwealth appealed, and the Massachusetts Appeals Court reversed the suppression order. The appellate tribunal noted that while the mother did encourage her son to answer the detective's questions, "Such concern does not render her a disinterested adult. Rather, her actions and her statements demonstrated a genuine concern for the juvenile and his future, and their interchanges evinced a strong parent-child relationship."[25] To disqualify her as an interested adult, the trial court was obligated to point to evidence demonstrating that "it should have been reasonably apparent to the officials . . . that the adult who was present . . . lacked capacity to appreciate the juvenile's situation and to give advice, or was actually antagonistic toward the juvenile."[26]

In another case,[27] a juvenile was charged with, and convicted of, burglary and first degree murder, and sentenced to life imprisonment. After his convictions were affirmed by the Supreme Court of Pennsylvania, he

---

[23] *Id.* at 366-67.

[24] *Id.* at 367-69. Among other statements, the mother told her son, in front of the detective, "No, I'm not crying for something negative that you're doing. No, I'm not. No, I'm not. The crowd of friends that you're hanging with, they're going to decease or you're going to decease. You're going to see either jail or you're going to see the light. And right now is the time to see the light, talk about what's going on right now, talk about where's that and what you're going to do, because my eight year old is downstairs and she got school tomorrow. So you need to hurry up with your conversation. Okay? 'Cuz I'm really getting sick of it. You know what you did, you know how you did it. Let it be known. They know that you done sold stuff downtown. They know that you been downtown selling stuff." 998 N.E.2d at 368.

[25] *Id.* (citation and internal explanation omitted).

[26] *Id.* (citation omitted).

[27] *Commonwealth v. Green*, 315 Pa. Super. 564, 462 A.2d 736 (1983).

commenced post-conviction proceedings pursuant to state law, and the trial court denied relief. On appeal he asserted, *inter alia*, that his attorney was ineffective for failing to move to suppress a statement the minor gave to a police detective at the precinct.[28] The case facts reveal that when the minor was arrested at his home, he and his mother were advised of his *Miranda* rights, after which he was transported to the police station.[29] The mother remained at home, but, subsequently, the accused's adult sister arrived at the precinct, where she executed a *Miranda* waiver form.[30] The intermediate appellate court affirmed the trial court's denial of relief finding that the juvenile's sister was an interested adult because she was an adult, was advised of and understood the minor's *Miranda* rights, and was present during the entire interrogation.[31] Notably, that court re-affirmed Pennsylvania's principle that "The requisite concern for the welfare of the juvenile is assumed to be present when a person of blood relationship is consulted. However, that assumption is not justified where the disinterest of the blood relative is graphically demonstrated."[32]

These cases, and others,[33] counsel that a parent who is upset over his or child's arrest, or encourages the arrested minor to answer questions

---

[28] *Id.* at 737-38.

[29] *Id.* at 738.

[30] *Id.*

[31] *Id.* at 740.

[32] *Id.* (citations omitted).

[33] *See also Bluitt v. State*, 269 Ind. 438, 381 N.E.2d 458, 461-64 (1978) (The statements of three 17-year old defendants were admissible where: 1) the father of the first teenager stated to the police he wished his son would "hurry up and turn eighteen so he would no longer have to come down when [the minor] was locked up," and told the defendant to "tell the truth;" 2) the mother of the second juvenile stated to the officers "I just want him to tell the truth;" and 3) the father of the third boy first declined to go to the police station with his son, although he eventually did attend, and expressed frustration because he wanted to paint his house that day, and desired that his child to tell the agents what he knew.); *State v. Hundley*, 760 So. 2d 417, 428-29 (La. Ct. App. 2000) ("In determining the admissibility of a juvenile's confession given after consultation with his parents, a court should not base its determination on whether a criminal defense attorney would have given different advice than the parents gave. If parents' advice to tell the truth requires exclusion of a juvenile's confession, then virtually no guilty juvenile will ever be convicted on a confession given after consultation with parents. The proper inquiry is whether the presence of and consultation with a concerned adult resulted in a voluntary and reliable statement."); *State ex rel. Q.N.*, 179 N.J. 165, 843 A.2d 1140, 1145-48 (2004) (The statement of a 14-year old was admissible, although it was taken after the mother had encouraged the minor to speak with the police and then exited the interrogation room.).

from law enforcement officials, is not placed in an "adverse position" vis-à-vis the child for purposes of § 2512(c) in the absence of other aggravating factors. Rather, the term "adverse position" as used in § 2512(c) encompasses a legal or practical conflict of interest between the adult and child, such as when the parent or guardian may be implicated in the crime being investigated, has a relationship with the victim, or appears set on forcing the juvenile to follow a course of conduct to which the child objects. It may also be shown if the adult abandons his or her responsibility for the minor, or appears unable to comprehend the gravity of the custodial situation. Of course, the foregoing examples are a non-exhaustive listing. As with other settings involving the waiver of statutory or constitutional rights, an assessment of the totality of the circumstances will determine whether the prosecution has met its burden of persuasion on the admissibility of a juvenile's statements under Section 2512. Here, Defendant Francis' parents came to the police station when called, stayed throughout the process and were engaged therein, and reflected concern for the situation of their son. While he may now disagree with some of his parents' actions that evening, the record does not reflect that Defendant Francis' parents were "adverse" to him on November 30, 2012. Therefore, the People have satisfied the Court that Section 2512(c) was not violated.

**2. The Statement was not Acquired Through a Violation of Defendant Francis' Fifth Amendment Right Against Self-Incrimination.[34]**

In addition to these statute-based arguments, Defendant Francis also argues that his waiver was not knowing and voluntary, and his statement taken in violation of his Fifth Amendment right against self-incrimination. He relies upon several cases from the United States Supreme Court, including *In re Gault*,[35] *Fare v. Michael*,[36] and *J.D.B v. North Carolina*.[37] While the legal principles set forth in these cases continue to serve as

---

[34] There is no dispute amongst the parties that Defendant Francis had been arrested and taken into custody at the time he was questioned. In light of their agreement on this issue, clearly *Miranda*, applies, and there is no need for a separate analysis of custodial interrogation.

[35] 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). *In re Gault* is distinguished from this case in section II.B.2 of this opinion.

[36] 442 U.S. 707, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979).

[37] 564 U.S. 261, 131 S.Ct. 2394, 180 L. Ed. 2d 310 (2011).

141

powerful precedents, the factual differences between those litigations and Defendant Francis'' case undermine his request for suppression.[38]

In *Fare*, the minor was taken into custody by the police, transported to the precinct, and read his *Miranda* rights. After he stated that he understood his rights, the police asked if he would talk to them about a recent murder. The juvenile requested the presence of his probation officer which was denied by the agents. The police again asked whether he would be willing to give a statement about the murder. The minor, who was between sixteen and seventeen years old, acquiesced and gave incriminatory statements which led to his being adjudicated delinquent in connection with the murder and remanded into custody until age twenty one. The Supreme Court, after reaffirming the principles of *Miranda* upheld the juvenile court's denial of the minor's motion to suppress and delinquency adjudication.

In *J.D.B.*, a 13-year old minor was removed from his on-going class and taken to a separate room in the school. There, he was questioned by a detective about several burglaries in the neighborhood where he resided. While some school officials were present, the child's grandmother, who was his legal guardian, was not contacted about the situation. The detective proceeded to question the minor for over thirty minutes without advising him of his *Miranda* rights. At one point, the detective suggested that this matter would be going to court, and there was a possibility that the minor would be detained at a juvenile facility while the case was pending. The minor then confessed to his involvement in the burglaries and provided information about the circumstances. It was only *after* the juvenile's confession that the detective provided him with his *Miranda* rights. The Supreme Court held that age was a valid consideration when determining whether a minor is in custody for purposes of *Miranda*, vacated the rulings of the state courts, and remanded the matter for further consideration.

In contrast to *Fare* and *J.D.B.*, as described above, Defendant Francis was given his *Miranda* warnings in the presence of his parents, acknowledged that he understood them, waived them in writing, and

---

[38] Defendant Francis also cited to *North Carolina v. Butler*, 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). However, *Butler* involved an adult criminal defendant, not a juvenile, and discussed the Fifth Amendment right to counsel. Defendant Francis' contention that his Fifth Amendment right to counsel was violated is addressed in Section II.B.2 below.

proceeded to give his statement in an atmosphere lacking any indicia of improper governmental coercion. Thus, to the extent that Defendant Francis contends that these Supreme Court cases support his proposition that his November 30, 2012, waiver of the right against self-incrimination was not knowing he is mistaken. Rather, applying the legal standards discussed in those cases to his facts, the record leads to the opposite conclusion.

 On a motion to suppress a statement based on an ineffective waiver of the Fifth Amendment right to remain silent, the People ultimately bear the burden of showing such waiver by a preponderance of the evidence.[39] A critical component of this inquiry is whether there was any governmental coercion or similar misconduct.[40] The challenging defendant initially bears the burden of demonstrating some illegality in how the subject statements were garnered, after which the burden switches to the prosecution to demonstrate a knowing, intelligent, and voluntary waiver of the right to self-incrimination and a voluntary statement.[41] Courts look at all of the attendant circumstances to determine whether the waiver of the right to remain silent was the product of the minor's own will, free from coercion, and with an appreciation for the nature of the right and the consequences of waiving the same.[42] As succinctly stated by one court, a non-exhaustive list of factors for deliberation on this issue includes,

> the juvenile's physical, mental, and emotional maturity; whether the juvenile or his or her parent understood the consequences of the juvenile's statements; whether the juvenile and his or her parent were informed of the delinquent act for which the juvenile was suspected; the length of time the juvenile was held in custody before consulting with his or her parent; whether there was any force, coercion, or inducement; and whether the juvenile and his or her parent had been advised of the juvenile's *Miranda* rights.[43]

---

[39] *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

[40] *Id.* at 170 ("The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion.") (citations omitted).

[41] *See United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992).

[42] *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986).

[43] *D.M. v. State*, 949 N.E.2d 327, 339-40 (Ind. 2011) (citations omitted).

 At the hearing, there was no evidence that Defendant Francis, who did not testify, gave his statement against his will. There was no testimony about any hesitation in giving his statement, or that any physical force, mental coercion, or other illegitimate actions were used by law enforcement or other governmental officials at any time while he was in custody. Defendant Francis was in custody only for a few hours before his parents arrived. During their absence he was not questioned by any officer and remained in an office by himself. Once his parents arrived, they were advised that Defendant Francis was detained in connection with a stolen vehicle. After his parents had an opportunity to speak with him alone, the *Miranda* Form was read to all of them, Defendant Francis executed it, and both parents witnessed the signature. There was no evidence presented that Defendant Francis, who was seventeen years old at the time of the inquisition, had any mental, physical, or emotional issues which may have compromised his ability to understand the *Miranda* warnings or the rights recited therein.[44] Further, Defendant Francis had two prior arrests and, therefore, was somewhat familiar with the process. Based on the record, looking at all of the circumstances, it is clear that Defendant Francis' waiver was given with a full appreciation of his rights and voluntarily. Because Defendant Francis did not meet his initial burden of demonstrating some illegality in how his statement was obtained, the request to suppress his statements of November 30, 2012, pursuant to his Fifth Amendment right not to incriminate himself will be denied.[45]

---

[44] On page 9 of the legal memorandum supporting his motion, Defendant Francis asserts that he has ". . . a low level of intelligence and comprehension." However, no affidavits were submitted, and no testimony was adduced at the hearing, to support these factual assertions. The Court will not accept these unverified averments of counsel in the memorandum because the ". . . unsworn representations of an attorney are not evidence." *Henry v. Dennery*, 55 V.I. 986, 994 (2011) (citations omitted).

[45] *See California v. Prysock*, 453 U.S. 355, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981) (A juvenile's statement to law enforcement officers was admissible at trial when his parents were present for questioning and he was advised of his rights to remain silent and to have an attorney present.).

## B. Defendant Francis' Statements Were not Obtained in Violation of Virgin Islands Law or his Fifth Amendment Right to Counsel.

### 1. Defendant Francis did not Have a Statutory Right to Counsel on November 30, 2012, Under the Circumstances in the Record.

Defendant Francis next contends that his statement was procured through violations of Title 5, Virgin Islands Code, Sections 2508(b)(4) and 2512. In support of his statutory arguments, Defendant Francis posits that the cited statutes required that he be represented at all stages of the investigation of the assault on Mr. Hyde, including on November 30, 2012, when he gave his statement. The People counter that a plain reading of the pertinent statutes reveals that they do not provide a right to an attorney.

In support of the argument that 5 V.I.C. § 2508(b) gives him a right to counsel, Defendant Francis cites to precedent from the Family Division of this Court.[46] However, the posture of *In re N.G.* is far different from the situation presented here. In that case, the minor was charged with delinquency premised upon his alleged commission of murder in the first degree and related charges. Because of the murder charge and the fact that he was at least 14 years old at the time of the underlying incident, he was required by law to be transferred to the Criminal Division of this Court to stand trial as an adult. Among other legal arguments, N.G. argued that the statute mandating the transfer of juveniles aged 14 years or older, who are charged with specified crimes, to the Criminal Division for adult prosecution violated his due process rights. The then-Territorial Court overruled N.G.'s contentions and upheld the constitutionality of section 2508(b). In so doing, the Court mentioned in passing that the minor was represented by counsel at all of the hearings held in the Family Division. Nowhere in the opinion does the Court address the issue of whether section 2508(b) requires a minor to have counsel present when questioned during a pre-complaint investigation.

 It is hornbook law that when the words of a legislative enactment are clear and unambiguous, that language expresses the intention of the Legislature, and Virgin Islands courts must honor that intent.[47] A review of the statute quickly resolves this issue. Section

---

[46] *Gov't of the V.I. in re N.G.*, 32 V.I. 73 (Terr. Ct. 1995).

[47] *E.g., Brady v. Cintron*, 55 V.I. 802, 820-21 (2011); *S.T. v. People*, 51 V.I. 420, 431-33 (2009) (Swan, J., concurring).

2508(b) is devoid of any language granting a minor the right to legal representation prior to the initiation of juvenile delinquency or criminal proceedings. In fact, the words "attorney" and "counsel" are not utilized in section 2508(b) or any of its subsections. Rather, those provisions only set forth the requirements by which a juvenile who is 14 years or older must be transferred to the Criminal Division for trial as an adult. Accordingly, section 2508(b)(4) does not support Defendant Francis' claim of a right to counsel.

 Turning to § 2512, as discussed above, statements made by a child to law enforcement personnel may not be used in proceedings against the minor unless the People can demonstrate "That a parent or guardian who does not have an adverse position, a friendly adult, or the child's attorney was present at the interrogation when a statement was given."[48] Generally, unless giving the word its literal meaning would lead to an absurd result or there is a clear indication to the contrary, use of the disjunctive word "or" in a statutory listing reflects a legislative intent to designate the items as alternatives.[49] Thus, only one of the three designated persons must be present when a minor is questioned by the authorities before any resulting statements may be admitted into evidence at a hearing or trial. It is indisputable that Defendant Francis' parents were present when he was questioned, and the Court has determined that his parents were not adverse to him within the meaning of the statute. Thus, Virgin Islands law did not require the presence of counsel at questioning of Defendant Francis on November 30, 2012, and his statement will not be suppressed on this basis.

## 2. Defendant Francis' Right to Counsel Pursuant to the Fifth Amendment was not Violated.

In support of his argument that his Fifth Amendment right to counsel was violated, Defendant Francis relies primarily on the United States

---

[48] 5 V.I.C. § 2512(c) (emphasis added).

[49] See generally 1 A NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 21:14 (2009 New Ed.). See also Skin Medica, Inc. v. Histogen, Inc., 727 F.3d 1187, 1199 (Fed. Cir. 2013) ("The disjunctive 'or' plainly designates that a series describes alternatives.") (citations omitted); In re Philadelphia Newspapers, LLC, 599 F.3d 298, 305 (3d Cir. 2010) ("The use of the word 'or' in this provision operates to provide alternatives — a debtor may proceed under subsection (i), (ii), or (iii), and need not satisfy more than one subsection.) (italics in original") (construing 11 U.S.C. § 1129(b)(2)(A)).

Supreme Court case of *In re Gault*.[50] However, that case involved judicial proceedings after a juvenile delinquency complaint was filed, and plainly does not address pre-complaint proceedings. The United States Supreme Court clearly stated

> We do not even consider the entire process relating to juvenile 'delinquents.' **For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process**, nor do we direct our attention to the post-adjudicative or dispositional process.[51]

 Further, in *Gault*, when the minor was taken into custody, his parents were not contacted. Neither the child nor his parents saw the delinquency petition prior to the initial and second hearings. They were not advised of the juvenile's right to counsel, and the case proceeded without him having the assistance of counsel. The posture and facts of *Gault* are in a different universe from those attendant to Defendant Francis. First, he is challenging the admissibility of a pre-complaint statement given to law enforcement officers. Second, he was questioned by law enforcement personnel in the presence of his parents. Third, he was advised of his rights to legal representation and against self-incrimination prior to being questioned. And, fourth, after being advised of those rights, orally and in writing, he executed the written waiver form indicating both his understanding of his *Miranda* rights and his agreement to give a statement notwithstanding his constitutional rights.[52] Moreover, his parents observed the entire procedure and witnessed his signature on the *Miranda* waiver form.

 Finally, after commencing his statement, neither Defendant Francis nor his parents stopped his narrative and demand that counsel be

---

[50] 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967).

[51] *Id.* at 13 (emphasis added).

[52] A waiver of the Fifth Amendment right to counsel must be knowing and voluntary, and the burden rests on the People to prove that Defendant Francis' waiver meets this standard. *E.g.*, *Edwards v. Arizona*, 451 U.S. 477, 482-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (citations omitted). *See also United States v. Most*, 789 F.2d 1411, 1416-17 (9th Cir. 1986) (citations omitted). In this case, the conclusion that Defendant Francis knowingly and voluntarily waived his Fifth Amendment right to counsel is supported by the same reasons which support the Court's finding that he knowingly and voluntarily waived his right against self-incrimination.

present for any further questioning. After being advised of his Fifth Amendment right to counsel, a defendant must demonstrate he made a clear demand for the presence of an attorney during questioning in order to establish a violation thereof.[53] Because Defendant Francis understood that he had a right to an attorney during questioning, voluntarily and knowingly waived that right, and did not subsequently demand the presence of an attorney, his challenged statement was not obtained in violation of his right to counsel under the Fifth Amendment and is admissible at trial.[54]

**C. The Information Taken from Defendant Francis' Cellular Telephone was Obtained in Violation of his Fourth Amendment Right Against Unreasonable Searches and Seizures.**

During the course of events on November 30, 2012, the VIPD also seized a cellular telephone from Defendant Francis, and subsequently searched said cell phone and garnered information and records therefrom.[55] Defendant Francis contends the People violated his Fourth Amendment rights when they seized this information without a warrant. The People counter that he gave consent for the search of the phone and the seizure of its contents.[56]

It is settled that the Fourth Amendment's restrictions on searches and seizures apply to items of personal property, and not solely to real property.[57] When seeking to suppress evidence based on an alleged violation of the Fourth Amendment, the movant bears the initial burden of

---

[53] *Davis v. United States*, 512 U.S. 452, 458-63, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994).

[54] *See, e.g., State v. Honey*, No. 03-C-01-9202-CR-00042, 1993 Tenn. Crim. App. LEXIS 83 at *19 (Tenn. Crim. App. Feb. 17, 1993) ("As a general rule, a statement made by a juvenile is admissible as evidence if the juvenile was given the *Miranda* warnings, these rights were understood by the juvenile, and the juvenile freely and voluntarily waived the rights before making the statement."); *See also Stanley v. State*, 866 S.W.2d 306, 309-11 (Tex. Ct. App. 1993).

[55] The People do not contest that they lacked a warrant to seize Defendant Francis' cellular telephone or to examine its contents. Therefore, it is established that the People did not act in conformity with the search and seizure provisions of the Virgin Islands Code. *See* 5 V.I.C. §§ 3901-06. Therefore, the only issue discussed herein is whether the People violated Defendant Francis' Fourth Amendment right to be free from unreasonable searches and seizures.

[56] Defendant Francis did not challenge the initial seizure of the cellular phone, and therefore, the Court limits its discussion to the search for the contents within the device and the seizure of the information located therein.

[57] *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) ("In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable

demonstrating that the challenged search was illegal and that he had a legitimate expectation of privacy in the item searched.[58] If the challenger meets this initial burden, then the People are obliged to demonstrate that search was still reasonable under the circumstances presented in the record.[59]

██ ██ In this case, it is not disputed that the law enforcement officials' search for the information located within Defendant Francis' cell phone was conducted without a warrant. Thus, the search was presumptively illegal.[60] With respect to Defendant Francis' privacy interests in the contents of his cell phone, he must have an objectively reasonable expectation of privacy and show that he subjectively· maintained his belief in that right.[61] The Supreme Court of the United States recently held that an individual has a significant expectation of privacy in the contents of his or her cell phone because of the nature and magnitude of the information customarily retained on these electronic devices.[62] The People contend, without presenting any legal support, that *Riley* cannot be applied to this case because it was decided after the search of Defendant Francis' cell phone.

██ ██ The Court disagrees with the People because there is a presumption that judicial precedents have retroactive effect.[63] There are certain circumstances under which a party may argue against the

within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.") (citing *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231, Treas. Dec. 42528 (1927)). *See also United States v. Crawford*, 552 Fed. Appx. 240, 245-46 (4th Cir. 2014) (citing *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001)), *cert. denied*, 134 S. Ct. 2682, 189 L. Ed. 2d 225 (2014).

[58] *E.g., Rawlings v. Kentucky*, 448 U.S. 98, 104-05, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) (citations omitted); *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (citation omitted).

[59] *See, e.g., United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015); *People v. Santana*, 63 V.I. 25, 30 (V.I. Super. Ct. 2014).

[60] *See, e.g., Gennusa v. Canova*, 748 F.3d 1103, 1117 (11th Cir. 2014) (citations omitted); *United States v. Reynolds*, No. CR-07-86-B-W, 2009 U.S. Dist. LEXIS 35136 at *24-25 (D. Me. Apr. 21, 2009) (citations omitted).

[61] *United States v. Kennedy*, 638 F.3d 159, 163-64 (3d Cir. 2011) (citations omitted).

[62] *Riley v. California*, 134 S.Ct. 2473, 2488-93, 189 L. Ed. 2d 430 (2014).

[63] *Solem v. Stumes*, 465 U.S. 638, 642, 104 S. Ct. 1338, 79 L. Ed. 2d 579 (1984).

retroactive application of a judicial precedent.[64] However, the People did not raise any such contention in their written or oral oppositions to this motion and, therefore, have waived such objections.[65] Thus, *Riley*, which reaffirmed the venerable constitutional principle that a warrant should be obtained from an impartial judicial arbiter before seizing or searching private property and applied it to the contents of a cell phone, governs this case.[66] Plaintiff met his initial burden, and the People now must persuade the Court that the search and seizure of the cell phone information was consistent with Fourth Amendment principles. The prosecution may sustain the validity of a warrantless search if it can demonstrate the existence of circumstances under which a warrant is not required.[67] Here, the People contend that the warrantless search of Defendant Francis' cell phone was constitutionally appropriate because he consented to law enforcement's examination and commandeering of its contents.[68]

It is settled that where an individual gives permission to a law enforcement officer to conduct a search of his real or personal property, the agent need not obtain a warrant before proceeding with the exploration.[69] But, the consent must be knowingly and voluntarily given, which is determined by reviewing the totality of the circumstances.[70] The prosecution bears the burden of demonstrating the presence of these

---

[64] *Id.*

[65] *See, e.g., Hopkins v. Buffalo Pumps, Inc.*, C.A. No. 09-181 S, 2009 U.S. Dist. LEXIS 111556 at *12 (D.R.I. Aug. 5, 2009) (citations omitted); *Zurich Capital Markets, Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1047 n.2 (N.D. Ill. 2005) (citations omitted).

[66] *Riley*, 134 S. Ct. at 2484-85.

[67] *Id.* at 2493-94.

[68] Although not raised in its written opposition, the People also argued orally that the search for the contents of Defendant Francis' cell phone was one incident to his arrest. However, the People did not clearly articulate what justified this warrantless intrusion, especially since the phone remained in their possession after Defendant Francis was released to the custody of his parents on November 30, 2012. It is clear that there was no danger that he could destroy any evidence contained in the device under the circumstances presented. Therefore, *Riley* counsels that this warrantless search cannot be justified under the "incident to arrest" theory.

[69] *E.g., Fernandez v. California*, 134 S. Ct. 1126, 1131-34, 188 L. Ed. 2d 25 (2014) (citations omitted); *United States v. Brown*, 563 F.3d 410, 414-15 (9th Cir. 2009) (citations omitted); *People v. Lewis*, No. ST-10-CR-301, 2011 V.I. LEXIS 38 (V.I. Super. Ct. July 5, 2011) (citations omitted).

[70] *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227-29, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005); *Trulock v. Freeh*, 275 F.3d 391, 401-02 (4th Cir. 2001).

factors in the record before the trial court.[71] The government cannot meet its burden by showing a mere "acquiescence to a claim of lawful authority,"[72] but it need not show that the defendant knew he had a right to refuse to consent.[73] Rather, the trial court must objectively ascertain whether it is reasonable to conclude that the consent to the search was knowing and voluntary.[74] Further, the scope of the government's search must be proportional to the consent validly granted by the defendant.[75]

Whereas the testimony from the law enforcement witnesses and Defendant Francis' parents about his statement was parallel in all significant respects, there are meaningful discrepancies between them about how the VIPD accessed the contents of this cellular device. The VIPD witnesses testified that they approached the parents for authority to access the contents of the telephone, and the parents gave them this authority. However, the parents did not have the access code, and according to the VIPD, they advised Defendant Francis to "unlock" the cell phone for the police. Defendant did so and turned the telephone over to one of the detectives. However, both parents testified that they did not give the VIPD any permission to access the cell phone or encourage Defendant Francis to consent to a search. Both testified that they saw Defendant Francis turn over the telephone to a detective, but no additional circumstances were elicited from them about this process. Notably absent from this testimony was any discussion of whether the authority sought by the VIPD, either from the parents or Defendant Francis, was via a request, a directive, or in some other form. There also was no testimony regarding the extent of the permission the VIPD sought and purportedly received. While it is not disputed that Defendant Francis unlocked and surrendered the cell phone, whether he did so after protest, with reluctance, or without reservation, was not elicited from any witness. The written statement taken from Defendant Francis, Plaintiff's Exhibit 2, does not discuss his cell phone or any request from the VIPD to access the

---

[71] *Bumper v. North Carolina*, 391 U.S. 543, 549-50, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *United States v. Cedano-Medina*, 366 F.3d 682, 684-85 (8th Cir. 2004).

[72] *Bumper*, 391 U.S. at 549.

[73] *Schneckloth*, 412 U.S. at 230-33.

[74] *United States v. Grant*, 371 Fed. Appx. 228, 229 (2d Cir. 2010); *United States v. Greene*, 56 M.J. 817, 822 (N-M. Ct. Crim. App. 2002) (citations omitted).

[75] *Florida v. Jimeno*, 500 U.S. 248, 250-52, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991); *United States v. Garcia*, 604 F.3d 186, 189-91 (5th Cir. 2010).

device for its contents. The receipt for the items the VIPD retained, Plaintiff's Exhibit 3, notes that the cell phone was ". . . *taken* from Khalif Francis, relative to this case . . ." (underscore added), but offers no other pertinent information regarding consent.

 With respect to the Fourth Amendment contest over the search and seizure of the cell phone's contents, Defendant Francis established the illegality of the search and his privacy interest in the matter. Consequently, the People have the obligation to show the propriety of their claimed search by consent ". . . beyond a preponderance of the evidence; meaning the government had to show that their position was more probable than not, that the evidence they offered was more convincing than the evidence offered in opposition to it."[76] In light of the dearth of germane circumstances the People presented on this subject, this Court concludes they have not met the burden of objectively and reasonably showing it was more likely than not that the alleged consent of Defendant Francis was actually provided in a knowing and voluntary fashion, or the scope of such consent.[77] Therefore, Defendant Francis' motion to suppress will be granted in this respect, and the evidence garnered from his cell phone may not be used by the People in their case-in-chief at trial.

## III. CONCLUSION.

Defendant Francis did not met his initial burden of demonstrating that his November 30, 2013, statement was obtained in violation of Virgin Islands law or his Fifth Amendment rights to counsel and against self-incrimination. However, he did show that the search of his cellular telephone and the seizure of its contents was illegal and violated his privacy rights therein, and the People did not present sufficient evidence proving a search by consent. Therefore, the People may use the November 30, 2012, statement against Defendant Francis in their case-in-chief at trial, but are prohibited from using the evidence improperly seized from his cell phone. An appropriate order of even date follows.

---

[76] *Gov't of the V.I. v. V.*, 43 V.I. 139, 147 (V.I. Terr. Ct. 2001).

[77] *See In re V.I. Bar Ass'n Comm. On the Unauthorized Practice of Law*, 59 V.I. 701, 716 (V.I. 2013) ("To prevail under a preponderance of the evidence standard, one needs only to prove that it is more likely than not that an event occurred . . .").